**William PHILLIPS and Linda Phillips, on behalf of Jocelyn Phillips, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF THE HENDRICK HUDSON SCHOOL DISTRICT, Defendant.**

**No. 95 CV 10850 (BDP).**

United States District Court, S.D. New York.

Jan. 3, 1997.

Elizabeth Koob, Koob & Magoolaghan, New York City, for Plaintiffs.

Wendy Brandenberg, Law Offices of Raymond Kuntz, Bedford Village, NY, for Defendants.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

William and Linda Phillips ("the Phillips") bring this action on behalf of their daughter, Jocelyn, seeking reimbursement of tuition and other expenses from the Board of Education of the Hendrick Hudson School District ("Board") under the Individuals with Disabilities Education Act ("the Act" or "IDEA"), 20 U.S.C. § 1400 *et seq.*

Pursuant to the Act, plaintiffs' claim was considered at a hearing before an independent hearing officer ("IHO"), whose decision was reviewed by a state review officer ("SRO"). The Phillips seek reversal of the SRO's determination denying them tuition reimbursement for Jocelyn's education at a specialized, non-approved, *see* 20 U.S.C. § 1401(a)(18)(A), private school for the years 1992–93, 1993–94 and 1994–95 and tutoring and counseling expenses for 1991–92. The

Phillips also assert that the Board violated the due process provisions embodied in the Act. *See* 20 U.S.C. § 1415(b). The Board counterclaims asserting that the SRO erred in finding the Board's recommended program for Jocelyn for the 1994–95 school year inappropriate.

Before this Court is defendant's motion for summary judgment, pursuant to Fed. R.Civ.P. 56, on both plaintiffs' claim and defendant's counterclaim. For the reasons stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

The central purpose of IDEA is to provide handicapped children with a "free appropriate public education." 20 U.S.C. § 1412(1). The Act embodies dual interests of Congress, first that handicapped children should not unnecessarily be excluded from activities with their non-handicapped classmates and second that the special needs of handicapped children are properly met. *See Board of Educ. of the Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176, 179, 102 S.Ct. 3034, 3037, 73 L.Ed.2d 690 (1982). Consistent with these interests, the Act seeks to facilitate the education of handicapped children in public schools, but allows for private school placement when a public system is unable or unwilling to meet a child's appropriate needs. *Florence County School Dist. Four v. Carter*, 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); *School Committee of the Town of Burlington v. Department of Educ.*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). In certain limited situations parents who unilaterally place their child in a private school which has not been approved by the "local education agency," *see* 20 U.S.C. § 1401(a)(18)(A), may be reimbursed for tuition costs at that school. *Carter*, 510 U.S. at 13–14, 114 S.Ct. at 365–66.

In order to provide handicapped children with a "free appropriate public education," the Act establishes a number of substantive and procedural requirements. Among those requirements is the creation of an "individualized educational program" ("IEP") which outlines the child's present educational performance, annual goals, specific educational services to be provided, the projected date of initiation and duration of those services and objective criteria and evaluation procedures. 20 U.S.C. §§ 1401(a)(18), 1401(a)(19).

Among its procedural safeguards, the Act gives the child's parents or guardian the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Such complaints are heard at an "impartial due process hearing" conducted by the State or local educational agency or intermediate educational unit. 20 U.S.C. § 1415(b)(2). When the hearing is conducted by a local agency or intermediate unit, as occurred in this case, the Act gives the State educational agency the power to hear appeals from the hearing and to "conduct an impartial review of such hearing ... [and] make an independent decision upon completion of such review." 20 U.S.C. § 1415(c). The Act provides for an additional tier of review, giving a party aggrieved by the findings and decision of the State educational agency the right to bring a civil action in state or federal district court. *See* 20 U.S.C. § 1415(e).

An IEP was first prepared for Jocelyn on May 12, 1992 for the remainder of the 1991–92 school year. Based on testing and evaluation conducted by the Board's Committee on Special Education ("CSE"), Jocelyn was classified as learning disabled. The CSE recommended that she continue in her then current public school placement in "regular education programs" and that she spend some time in the school's "resource room." At that time, Jocelyn was in the fourth grade at Furnace Woods Elementary School ("Furnace Woods"). By the time the IEP was prepared for Jocelyn, the Phillips had already, by a April 2, 1992 letter, notified the Board that Jocelyn would be attending private school for the 1992–93 school year. On June 30, 1992, a second IEP was prepared for Jocelyn, presumably for the 1992–93 school year.

Jocelyn began attending the private Windward School ("Windward"), a specialized, non-approved school, in September 1992. In August 1993, the CSE prepared an IEP for

Jocelyn for the 1993–94 school year. Jocelyn continued to attend Windward and in August 1994, the CSE prepared an IEP for her for the 1994–95 school year. The June 1992, August 1993 and August 1994 IEPs recommended that Jocelyn continue at Furnace Woods in the regular education program and that she attend the school's resource room for some time each day.

Beginning in May 1992, the Phillips made a number of requests to the Board for tuition reimbursement, reimbursement for counseling and tutoring services and transportation to Windward. The requests for transportation were approved while the other requests were denied. Though the Phillips first began to complain about the Board's handling of Jocelyn's education in 1989, they did not make their first formal complaint to the IHO for nearly five years—in January 1995.

In response to the January 1995 complaint, a five-day hearing was conducted by an Impartial Hearing Officer (IHO) during February and March 1995. The IHO concluded that the services provided by the Board for Jocelyn were inappropriate and that the services obtained by the Phillips, namely the program at Windward, were appropriate. Accordingly, the IHO granted the Phillips reimbursement for tuition paid to Windward for 1994–95, but denied tuition reimbursement for 1992–93 and 1993–94 and reimbursement for tutoring and counseling services for 1991–92, relying on the doctrine of laches and finding that the Phillips failed to make complaints regarding the IEPs developed for 1991–92, 1992–93 and 1993–94 in a timely fashion. The Board then appealed to the State Education Department and the Phillips cross-appealed the denial of tuition reimbursement for 1992–93 and 1993–94 and reimbursement for tutoring and counseling services for 1991–92.

The SRO hearing the appeal for the State Education Department reversed the grant of tuition reimbursement for 1994–95, finding the IHO failed to consider properly the Act's preference that a child with disabilities be placed in the least restrictive appropriate environment and that the record did not support a finding that Jocelyn's needs, "could not have been met in a less restrictive setting than the Windward School." The SRO affirmed the denial of reimbursement for 1991–92, 1992–93 and 1993–94.

## STANDARD OF REVIEW

### A. Summary Judgment

A motion for summary judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see H.L. Hayden Co. v. Siemens Medical Systems, Inc., 879 F.2d 1005, 1011 (2d Cir.1989). It is the burden of the moving party to demonstrate initially the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); see also Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Affidavits in support or opposition of a summary judgment motion must be made on personal knowledge, setting forth facts which would be admissible at trial by an affiant who is competent to testify to the matters within the affidavit. Fed.R.Civ.P. 56(e). A showing that there is a genuine issue of fact for trial requires a showing sufficient to establish the existence of every element essential to the party's case, and on every element for which the party will bear the burden of proof at trial. In deciding whether there is a genuine issue for trial, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir.1989). Where the nonmovant's evidence is merely conclusory, speculative or not significantly probative, summary judgment should be granted. Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12–15 (2d Cir.1986), cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

### B. District Court Review under IDEA

20 U.S.C. § 1415(e)(2) provides that "the court shall receive the records of the admin-

istrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." Under § 1415(e)(2), the Court's review is limited to two issues. First, the Court must determine whether the State complied with the procedures set forth in the Act and second, whether the IEP was reasonably calculated to enable the child to receive educational benefits. *Briggs v. Board of Education of State of Conn.*, 882 F.2d 688, 693 (2d Cir.1989) (citing *Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3050–51).

■ Recognizing that specialized administrative officers conducting the necessary review are better equipped than federal courts to make determinations as to educational matters, under IDEA the reviewing District Court must give "due weight" to the record of the impartial hearing. *Mavis v. Sobol*, 839 F.Supp. 968, 986 (N.D.N.Y.1994) (quoting *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3050); *see also Briggs*, 882 F.2d at 693. By failing to give the proper deference to the determinations made below, courts run the risk of substituting their views of proper educational policy for those of the administrative officers, thus seriously undermining the procedural protections established by Congress. *See Rowley*, 458 U.S. at 206–07, 102 S.Ct. at 3050–51.

## DISCUSSION

In support of its motion for summary judgment the defendant advances two arguments. Defendant first contends that plaintiffs failed to exhaust their administrative remedies with respect to their due process claims and second, that plaintiffs failed to make formal objections, pursuant to 20 U.S.C. sec. 1415(b)(1)(E), to the CSE's recommendations for Jocelyn for 1991–92, 1992–93 and 1993–94 in a timely fashion and therefore any claims relating to those years should be barred by the equitable doctrine of laches.

In support of its motion for summary judgment on its counterclaim, defendant submits that the SRO erred in finding the CSE's recommended program for Jocelyn for 1994–95 inappropriate.

### Exhaustion

■ In arguing that plaintiffs' due process claims are not properly before this Court because of plaintiffs' failure to exhaust their administrative remedies, defendant misconstrues the exhaustion doctrine. Exhaustion of administrative remedies requires simply that where a statute provides for an administrative remedy, that remedy must be sought before seeking judicial review. *McKart v. U.S.*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Able v. U.S.*, 88 F.3d 1280, 1288 (2d Cir.1996) (citations omitted).

While there is no doubt that there is an exhaustion requirement under IDEA, *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992); *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981), the record indicates that the Phillips brought the issue of due process violations to both the IHO and the SRO and thereby satisfied the exhaustion requirement of the Act.[1] Consequently, summary judgment on this ground is denied.

### Laches

While there is no express statute of limitations prescribing the time within which parents must assert claims under IDEA, both the IHO and the SRO denied the plaintiffs' claims (both procedural and substantive) under the Act for the school years 1991–92, 1992–93 and 1993–94 relying on the doctrine of laches. Laches, an equitable defense which may be asserted in situations in which there is no statutory time-bar, occurs when a party, by omission or neglect, fails to assert a right in a timely fashion and that lapse of time causes prejudice to the adverse party. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187 (2d Cir.1996).

■ Consistent with the equitable nature of laches, courts typically decline to apply the

---

1. While the decisions of the IHO and the SRO focused primarily on substantive claims under IDEA, procedural due process issues were raised before both these officers. *See, e.g.*, Transcript of Impartial Hearing at 13. Although a number of the procedural issues were considered in the context of laches, the IHO and SRO were able to consider and, "bring their expertise to bear" on the various due process claims asserted. *See Heldman*, 962 F.2d at 158 (citations omitted).

doctrine when the party against whom it would be applied can show good cause as to why it should not be applied. *Id.* at 191. In the case at bar, Plaintiffs assert that this good cause exists because (1) they were not properly informed of their rights to have a complaint heard by an IHO as the materials they received from the Board outlining a parent's due process rights under IDEA were inadequate and (2) they were affirmatively misled by the then principal of Furnace Woods as to their due process rights. The Phillips contend that these two factors taken individually or in combination establish good cause for their failure to bring a complaint to the IHO between 1989 and January 1995.[2]

In considering this issue, the SRO concluded that the information regarding due process rights was "adequate to advise them of their right to seek review of any determination by the CSE. . . ." Furthermore, the SRO noted that the Phillips have conceded that they consulted an attorney in 1992 or 1993 about their rights under the Act. Having reviewed the due process materials, including, *A Parent's Guide to Special Education for Children Ages 5–21: Your Child's Right to an Education in New York State* (July 1992), given to plaintiffs after each IEP was prepared, I concur that they were adequate to provide the Phillips notice of their right to make a formal complaint to an IHO.[3] Assuming *arguendo* that the due process notices were insufficient or misleading in some manner, I find that the fact that the Phillips had consulted an attorney familiar with IDEA as early as 1992 or 1993 actually made them, or actually should have made them, aware of their procedural rights under IDEA.[4]

In order to prevail on a defense of laches, a defendant must prove not only untimeliness in asserting a right but also that plaintiff's unreasonable delay prejudiced the defendant. *Conopco,* 95 F.3d at 192 (2d Cir.1996); *Tri-Star Pictures, Inc. v. Leisure Time Productions, B.V.,* 17 F.3d 38, 44 (2d Cir.), *cert. denied,* —— U.S. ——,. 115 S.Ct. 484, 130 L.Ed.2d 396 (1994).

Here, the Board asserts that prejudice lies in not being afforded the opportunity—close in time to the preparation of the IEPs—to make changes in the program recommended for Jocelyn, such changes which might have obviated the need for her to attend private school, and also in having to defend IEPs developed many years earlier.[5] The IHO,

2. While the Phillips made numerous complaints about the Board's treatment of Jocelyn's education, the case law makes clear that such complaints should not be treated as formal complaints pursuant to 20 U.S.C. § 1415(b)(1)(E). *Bernardsville,* 42 F.3d 149, 157 (3d Cir.1994) ("mere notice of parental 'dissatisfaction' does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future and seek reimbursement for an interim unilateral placement in a private institution").

3. Among the representations which the Phillips describe as misleading is that parents are not entitled to receive tuition reimbursement when they unilaterally place their children in non-approved private schools. This statement was not misleading when made in 1992 as until November 1993, when *Florence County School Dist. v. Carter* was decided, that was the law of this Circuit. *See Tucker v. Bay Shore Union Free School Dist.,* 873 F.2d 563, 568 (2d Cir.1989) (parental placement in a private school cannot be proper under the Act unless the private school in question meets the standards of the state education agency), *abrogated, Florence County School Dist. v. Carter,* 510 U.S. 7, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

4. The Phillips assert that Furnace Woods principal Joanne Falinski affirmatively misled them as to their rights under IDEA and have submitted a newspaper article which states that a disciplinary hearing, dealing primarily with charges of "obstructing children at Furnace Woods Elementary School from getting special education services," has been convened against Dr. Falinski. Margie Druss, "Principal admits to note," *The Star (Peekskill),* Dec. 1, 1996, at 1. On this motion I presume the veracity of the Phillips' assertion, but find that due to the combination of notices and the fact that the Phillips had consulted counsel regarding this matter, the SRO appropriately concluded that they knew or should have known of their procedural rights under IDEA.

5. The requirement that complaints asserted under IDEA should be made in a timely fashion not only protects the school district from prejudice but also assures that handicapped children are provided appropriate educational programs without lengthy delays. *See Bernardsville Board of Educ. v. J.H.,* 42 F.3d 149, 158 (3d Cir.1994) ("the right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP.") In *Bernardsville,* the Court determined that there was, "an appalling failure on the part of the education bureau-

which the Act itself recognizes is better-situated than this Court to evaluate the work of educational agencies, found that the Board was prejudiced by plaintiffs' delay (32 months with respect to the May 1992 IEP, 31 months with respect to the June 1992 IEP and 17 months with respect to the August 1993 IEP) in making a formal complaint. Construing all facts and making all reasonable inferences in favor of the plaintiffs, *see Ramseur,* 865 F.2d at 465, and paying the appropriate deference to the administrative officers below, I find no reason to disturb the finding that plaintiffs' claims for reimbursement for 1991–92, 1992–93 and 1993–94 should be denied. Accordingly, defendant's motion for summary judgment is granted on the issue of whether plaintiffs' claims under IDEA are barred for the school years 1991–92, 1992–93 and 1993–94.

*Claims for 1994–95*

█ In its counterclaim, defendant asserts that the SRO's conclusion that the Board's recommended program for Jocelyn for 1994–95 was inappropriate should be reversed, and have moved for summary judgment on the claim.[6] Both the IHO and the SRO found facts sufficient to support a conclusion that the Board failed to provide an appropriate program for Jocelyn for 1994–95. In making that determination, the IHO concluded:

By that time [May 1992, when a IEP was first prepared for Jocelyn] J. was already significantly behind her classmates in reading and spelling and there was no clear method by which her remediation was to be accomplished in the one period per day J. was to spend in [the] Resource Room. I find that less than the required

efforts were made by the CSE to determine the specialized individual instruction needs which J. required. I find it noteworthy that no medical assessment appears in the record. Its omission is significant to me in view of the important question as to how J.'s needs should be remediated.

The IEP prepared for Jocelyn for 1994–95 differed only minimally from the one prepared in May 1992 and in terms of "specialized individual instruction" it did not go beyond the recommendation of one period per day in the resource room. It is therefore clear that there are issues of material fact as to whether the deficiencies found by the IHO with respect to the May 1992 IEP were also present in the August 1994 IEP. Therefore, defendant's motion for summary judgment on this issue is denied.[7]

█ With respect to 1994–95, the Phillips seek a reversal of the SRO's determination that Windward was not the least restrictive appropriate alternative for Jocelyn's education. Once it is determined that a school district has failed to provide an appropriate education for a child as required by the Act, parents may only receive tuition reimbursement for a private school if that placement is found to be appropriate for the child. *Carter,* 510 U.S. at 15, 114 S.Ct. at 366.

In considering whether a placement is appropriate, the strong statutory preference in favor of "mainstreaming" must be respected. *Briggs,* 882 F.2d at 692. ("While mainstreaming is an important objective, we are mindful that the presumption in favor of

---

cracy to develop and implement an appropriate IEP [for J.H.]," *id.* at 156, but found that a delay of greater than one year by J.H.'s parents in making a formal complaint regarding the IEP was an unreasonable delay. *Id.* at 158.

6. The SRO engaged in a bifurcated analysis, first considering whether the Board's recommended program was appropriate, and having found the program inappropriate, then considering whether the program chosen by the Phillips was the "least restrictive alternative" for Jocelyn. The Board seeks affirmance of the SRO's finding that the program chosen by the Phillips was not the least restrictive alternative.

7. Defendant bases its motion for summary judgment on the issue of the appropriateness of the Board's program for Jocelyn for 1994–95 on the SRO's conclusion that the testimony of the sixth grade Resource Room teacher was inadequate as Jocelyn would have been in seventh grade in 1994–95. Defendant asserts the SRO erred in failing to recognize that the Resource Room teacher in question taught a combined sixth/seventh grade group. Even if that were correct, which I do not assume, defendant fails to recognize that the SRO did not base his decision on this issue on this question alone. The SRO also found that the failure of the CSE to obtain information about Jocelyn's then current level of performance made the IEP inappropriate.

mainstreaming must be weighed against the importance of providing an appropriate education to handicapped students.") In reversing the IHO's finding that Windward was an appropriate placement for Jocelyn, the SRO determined, "there is no basis in the record for concluding that ... [Jocelyn's] needs could not have been met in a less restrictive setting than the Windward School."

While limited evidence was submitted to the IHO on the issue of the appropriateness of Windward for Jocelyn, he concluded, based on the testimony of Dr. Sylvia Epstein, a psychologist who is employed as a consultant to Windward, general descriptive materials about the program offered by Windward, Jocelyn's achievement level before attending Windward and Jocelyn's success at Windward, that there was sufficient evidence to conclude that Windward was an appropriate placement. Although the IHO did not make a specific finding that Windward was the "least restrictive" appropriate placement for Jocelyn, I find no reason to assume that he was not aware of the preference for mainstreaming when he concluded that Windward was an appropriate placement.[8]

Considering the conclusion made by the IHO on the issue of appropriateness of Windward and the fact that the parties have the right to submit additional evidence to this Court, see 20 U.S.C. § 1415(e)(2), I find, giving due weight to the determinations made below, that a motion for summary judgment is an inappropriate vehicle to decide this issue. Because issues of material fact remain as to whether Windward was an appropriate placement, considering the Act's preference for mainstreaming, for Jocelyn, defendant's motion for summary judgment on this issue is denied.

8. The transcripts of the impartial hearing demonstrate that Windward only accepts students who are significantly below grade level. This fact supports an inference that Jocelyn would not have been accepted at Windward if her educational needs could have been met in a much less restrictive environment. Additionally, at the proceeding below, evidence was introduced that the Phillips sought to have Jocelyn placed at the private Rippowam Cisqua School ("Rippowam").

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted in part and denied in part. The parties are ordered to submit to this Court any additional evidence, see 20 U.S.C. § 1415(e)(2), necessary to the Court's decision regarding substantive and procedural claims for 1994–95 within sixty (60) days of the entry of this order.

SO ORDERED.

In rejecting Jocelyn, the Rippowam Admissions Committee explained; "[e]ven with a repeat [of a grade], this bright, learning disabled youngster needs more support services than we are able to provide to give her the academic success she deserves." I find this conclusion supports an inference that less restrictive environments were considered for Jocelyn, but they were found to be inappropriate to meet her educational needs.