10-1160-cv (L)
*Davis v. Wappingers Central School District*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 3rd day of June, two thousand eleven.

PRESENT:     ROBERT D. SACK,
             DEBRA ANN LIVINGSTON,
             GERARD E. LYNCH,
                          *Circuit Judges.*

---

WILLIAM DAVIS, parent of a disabled student, Christopher R., LISA DAVIS, parent of a disabled student, Christopher R.

> *Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees*,

-v.-                                         Nos.    10-1160-cv (Lead)
                                                     10-1429-cv (XAP)

WAPPINGERS CENTRAL SCHOOL DISTRICT,

> *Defendant-Counter-Claimant-Appellee-Cross-Appellant.*[*]

---

ROSALEE CHARPENTIER, Family Advocates, Inc., Kingston, NY, *for Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees.*

---

[*] The Clerk of the Court is directed to amend the official caption to conform with the caption above.

JAMES P. DROHAN, Donoghue, Thomas, Auslander & Drohan, LLP, Hopewell Junction, NY, *for Defendant-Counter-Claimant-Appellee-Cross-Appellant*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiffs-Counter-Defendants-Appellants-Cross-Appellees William and Lisa Davis ("Plaintiffs") appeal from a Memorandum Opinion and Order of the United States District Court for the Southern District of New York (Eginton, *J.*), entered February 16, 2010, granting summary judgment to the Defendant-Counter-Claimant-Appellee-Cross-Appellant Wappingers Central School District ("Defendant" or "the School District") on Plaintiffs' claim for tuition reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et. seq.* Plaintiffs sought review of administrative decisions by a State Review Officer ("SRO") and an Impartial Hearing Officer ("IHO") denying Plaintiffs a tuition reimbursement for the private school to which they sent their child for the 2004-05 school year. Defendant cross-appeals from the District Court's grant of summary judgment on its claim challenging the ruling by the SRO and the IHO that the Individualized Education Plan ("IEP") provided to Plaintiffs' child was inadequate. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* a grant of summary judgment by the district court in an IDEA case. *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009). In doing so, we recognize that "the role of the federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.' " *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (quoting *Muller v. Comm. on Special Educ.*, 145 F.3d 95, 101 (2d Cir. 1998)).

2

"Although the district court must engage in an independent review of the administrative record and make a determination based on a 'preponderance of the evidence,' . . . such review 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.' " *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir. 2005) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). We are thus required to "give 'due weight' to [the administrative] proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.' " *A.C. ex rel. M.C.*, 553 F.3d at 171 (alterations in original) (quoting *Gagliardo*, 489 F.3d at 113) (internal quotation marks omitted).

A three-step process governs whether parents suing under the IDEA are entitled to reimbursement for private school tuition. The first two steps ask "whether the state has complied with the procedures set forth in the IDEA," *Cerra*, 427 F.3d at 192, and "whether the IEP developed through the Act's procedures '[is] reasonably calculated to enable the child to receive educational benefits,' " *id.* (alteration in original) (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998)) (internal quotation marks omitted). If these requirements are not met, the court then engages in a third step, asking "whether the private schooling obtained by the parents is appropriate to the child's needs." *Id.* "Moreover, because the authority to grant reimbursement is discretionary, 'equitable considerations [relating to the reasonableness of the action taken by the parents] are relevant in fashioning relief.' " *Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 363-64 (2d Cir. 2006) (alteration in original) (quoting *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 374 (1985)).

Defendant argues on appeal that it did in fact provide a free appropriate public education ("FAPE") to Plaintiffs' son, despite acknowledged procedural violations in the formation of an IEP for the 2004-05 school year. This Circuit has noted that "[t]he initial procedural inquiry in an IDEA case 'is no mere formality,' as 'adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.' " *A.C. ex rel. M.C.*, 553 F.3d at 172 (quoting *Walczak*, 142 F.3d at 129) (internal quotation marks omitted). At the same time, "it does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003). Rather, a procedural violation will constitute a denial of a free and appropriate public education "only if the procedural inadequacies (I) impeded the child's right to a free appropriate public education; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a free appropriate public education to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

Here, the SRO concluded, and the district court affirmed, that the School District failed to offer a FAPE to Plaintiffs' son for the 2004-05 school year based on the improper composition of the Committee on Special Education ("CSE") developing an IEP for the student, the CSE's "failure to consider appropriate evaluative data," and the Defendant's "failure to timely implement an IEP," with the parents not being provided with an IEP until after the school year had commenced. Reviewing the record in this case, we can find no basis for overturning the SRO's conclusion that the identified procedural violations "impeded parental participation in the formulation of the IEP and denied the student educational benefits." While the School District asserts that the parents were

4

already familiar with some aspects of the program proposed for their child for the 2004-05 school year, the record supports the SRO's conclusion that no one present in either CSE meeting held to develop the IEP in question was able to answer questions about the curricular requirements Plaintiffs' son would face in the eighth grade or about the services and modifications that would be provided. Moreover, in its appeal to this Court, the School District simply fails to address the IHO's and SRO's conclusions that the CSE in this case failed to consider timely evaluative data and that the School District failed to have in place an IEP at the beginning of the school year, both violations likely to deny the student educational benefits and to impede the parents' participation in the IEP's development. Whatever the substantive merits of the IEP ultimately provided for Plaintiffs' son, particularly in light of the deference we owe to the IHO's and SRO's conclusions, we must conclude that the procedural violations present here significantly affected the parents' ability to participate in developing the IEP and deprived their son of educational benefits. As such, they constituted a denial of a FAPE for the 2004-05 school year.

However, at the third step of our inquiry, in order to be entitled to reimbursement for the tuition paid to the Kildonan School ("Kildonan") for the 2004-05 school year, Plaintiffs must demonstrate that "the private schooling obtained by the parents is appropriate to the child's needs." *Cerra*, 427 F.3d at 192. Plaintiffs appeal from that portion of the district court decision affirming the IHO's and SRO's determination that they failed to show Kildonan was a proper placement for their son.

The parents raise a number of arguments on appeal. First, they argue that the district court erred by imposing too high a standard on them in demonstrating the private placement's appropriateness, allegedly requiring proof of both "successful results in every deficit area" and

5

modifications to address their son's "ancillary" disabilities.  However, it is clear from a review of the decisions of the SRO and the district court that both applied the proper standard.  Both assessed whether the parents' unilateral placement of their son at Kildonan was "reasonably calculated to enable the child to receive educational benefits," *Frank G.*, 459 F.3d at 365 (quoting *Rowley*, 458 U.S. at 207), by looking to whether the parents "demonstrate[d] that the placement provides 'educational instruction specially designed to meet the unique needs of [the] handicapped child, supported by such services as are necessary to permit the child to benefit from instruction,' " *id.* (quoting *Rowley*, 458 U.S. at 188-89).  While the SRO did agree with the IHO that the progress of Plaintiffs' son was "disappointing" during his eighth grade year, it noted that this factor was not dispositive and proceeded to focus its analysis of the appropriateness of the placement on a review of the student's particular needs related to his disability and the manner in which Kildonan's program was designed to address those needs at the time the unilateral placement was made.

Second, in opposing the SRO's conclusion that the parents failed to show "how Kildonan addressed their son's needs related to his auditory processing deficit, or his difficulties with organization and completing his assignments," the parents argue that the SRO's determination placed too much weight on the degree to which Kildonan's program failed to address what they term their son's "ancillary skill areas" and too little weight on the school's asserted ability to help address his reading, writing, and math deficits.[1]  In considering this argument, we recognize that our inquiry in assessing a particular placement's appropriateness must focus not on the general benefits a school may impart but rather on the degree to which it addresses a student's *particular* needs.  *See*

---

[1] As Defendant notes, contrary to Plaintiffs' assertion in this proceeding, the record reflects that math in fact appeared to be an area of relative strength for the student in this case.

*Gagliardo*, 489 F.3d at 115 ("[E]ven where there is evidence of success, courts should not disturb a state's denial of IDEA reimbursement where, as here, the chief benefits of the chosen school are the kind of educational and environmental advantages and amenities that might be preferred by parents of any child, disabled or not.").

While we have made clear that "parents need not show that a private placement furnishes every special service necessary to maximize their child's potential" before reimbursement is available under the IDEA, *Frank G.*, 459 F.3d at 365, the SRO applied no such stringent standard here. Rather, the SRO properly relied on the testimony of Kildonan's academic dean in concluding that the school failed to develop a behavioral plan to address Plaintiffs' son's attentional difficulties, as recommended by their own private neuropsychologist, beyond simply seating the student near the front of the class. Moreover, despite the student's significant auditory processing deficits, the record reflects that the primary method of instruction for Kildonan's content-area teachers — for this student along with all other students at the school — is to read aloud to them, with no evidence of multisensory methods deployed in this setting that would be "specially designed" for a student whose disabilities interfered with his ability to follow or absorb instruction presented through auditory input. Finally, the record supports the SRO's conclusion that despite the student's difficulties completing assignments and with organization, there is no evidence of specific strategies on Kildonan's part, beyond a general strategy of "breaking down assignments," designed to address these areas of need identified by Plaintiffs' evaluator. Indeed, to the contrary, Kildonan's academic dean testified that the school's language tutorial alone generated one and a half hours of daily assignments for the student. As a result of these considerations, and mindful that "[d]eference is particularly appropriate when, as here, the state hearing officers' review has been thorough and

7

careful," *Walczak*, 142 F.3d at 129, we affirm the conclusion that the parents failed to present sufficient evidence in this case to counter the administrative record in the state proceedings and demonstrate that Kildonan was appropriate to their son's unique needs.

We have considered all of Appellants' and Cross-Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk