Joan GRIM and Steven Grim, parents of a disabled child, Chelsea, Plaintiffs–Appellees,

v.

RHINEBECK CENTRAL SCHOOL DISTRICT, Defendant–Appellant.

No. 02–7483.

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 2003.

Decided Oct. 8, 2003.

As Amended Oct. 24, 2003.

Mark C. Rushfield (Michael K. Lambert, on the brief), Shaw & Perelson, LLP, Poughkeepsie, NY, for Defendant–Appellant.

RosaLee Charpentier, Family Advocates, Inc., Kingston, NY, for Plaintiff–Appellee.

Before: LEVAL and CABRANES, Circuit Judges, and AMON, District Judge.*

* The Honorable Carol B. Amon, of the United States District Court for the Eastern District of New York, sitting by designation.

JOSÉ A. CABRANES, Circuit Judge.

Defendant appeals from the District Court's award of $51,603.13 in private-school tuition reimbursement to plaintiffs under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* The District Court held that the individualized education programs proposed by the defendant school district for the education of the plaintiffs' daughter were insufficient to provide the student with a "free appropriate public education" as required by the IDEA. In so holding, the District Court reversed decisions denying reimbursement rendered by two Impartial Hearing Officers ("IHOs") and affirmed by a State Review Officer ("SRO") of the New York State Education Department.

Having reviewed the record before the District Court, we reverse the judgment of the District Court and enter judgment affirming the administrative determinations of the New York State Education Department.[1]

## BACKGROUND

### I. The IDEA

The IDEA offers federal funds to states that develop plans to assure "all children with disabilities" a "free appropriate public education," 20 U.S.C. § 1412(a)(1)(A). To meet the requirements of the IDEA, a school district must provide each student with a disability with "special education and related services" designed to serve the student's needs. *Id.* § 1401(8). Such services must be administered according to an "individualized education program" ("IEP"), which school districts must imple-

ment each year for each student with a disability. *Id.* § 1414(d).

IEPs are subject to numerous procedural and substantive requirements, *id.*, but they are not required to "furnish[ ] ... every special service necessary to maximize each handicapped child's potential," *Board of Education v. Rowley*, 458 U.S. 176, 199, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Rather, the IDEA requires that IEPs provide a "basic floor of opportunity," consisting of services that are "individually designed to provide educational benefit" to a child with a disability. *Id.* at 201, 102 S.Ct. 3034.[2]

The IDEA further imposes on school districts developing IEPs a strong preference for "mainstreaming," or educating children with disabilities "[t]o the maximum extent appropriate" alongside their non-disabled peers. 20 U.S.C. § 1412(a)(5). We have interpreted this provision as a requirement that special education be provided in the "least restrictive setting consistent with a child's needs." *Walczak v. Florida Union Free School District*, 142 F.3d 119, 122 (2d Cir. 1998).

New York parents who believe an IEP is insufficient under the IDEA may challenge it in an "impartial due process hearing," 20 U.S.C. § 1415(f), before an IHO appointed by the local board of education, *see* N.Y. Educ. L. § 4404(1). At that hearing, the school district has the burden of demonstrating the appropriateness of its proposed IEP. *See, e.g., Walczak*, 142 F.3d at 122 (collecting cases). The decision of an IHO may be appealed to an SRO, *see*

---

1. On September 9, 2003, we filed a summary order, which we amended on September 10, 2003. We hereby withdraw that order and publish this opinion in its place.

2. In fact, the Supreme court in *Rowley* interpreted the Education for All Handicapped

Children Act of 1975, which was subsequently amended and renamed the IDEA. *See Walczak v. Florida Union Free School District*, 142 F.3d 119, 122 (2d Cir.1998). For consistency and ease of comprehension, we refer to the statute throughout its history as the IDEA.

N.Y. Educ. L. § 4404(2); *see also* 20 U.S.C. § 1415(g), and the SRO's decision may in turn be challenged in either state or federal court, *see* 20 U.S.C. § 1415(i)(2)(A).

## II. Facts and Procedural History

Plaintiffs–appellees Steven and Joan Grim enrolled their daughter, Chelsea, in defendant–appellant Rhinebeck Central School District for first and second grades. Toward the end of her second-grade year, Chelsea was tested at her parents' request and classified as "learning disabled." Accordingly, the school district developed an IEP outlining a program of special education for her. Chelsea began receiving instruction pursuant to the IEP during the final month of her second-grade year in June 1995.

During the summer of 1995, the Grims concluded that the IEP was insufficient to meet Chelsea's needs, so they unilaterally removed her from the Rhinebeck public schools and enrolled her in the private Kildonan School ("Kildonan"), which specializes in the education of dyslexic students. Kildonan teaches according to the Orton–Gillingham method, "a language based remedial program for students who have specific difficulties in the phonological encoding and decoding of the language." *See Grim v. Rhinebeck Central School District,* No. 98 Civ. 4854, slip op. at 20–21 (S.D.N.Y. Mar. 29, 2002) (citation omitted).

Near the conclusion of Chelsea's third-grade year at Kildonan, the Grims formally challenged the adequacy of the IEP that had been developed the previous spring ("the 1995–96 IEP") by requesting an impartial hearing before an IHO, as authorized by the IDEA. They sought reimbursement from the Rhinebeck Central School District for the expense of sending Chelsea to Kildonan. After hearing extensive testimony, the IHO determined on March 14, 1997 that the 1995–96 IEP was appropriate and legally sufficient under the IDEA, and further, that Kildonan was not an appropriate placement for Chelsea because of the IDEA's preference for educating students in the "least restrictive environment." An SRO affirmed the IHO's decision on March 10, 1998.

In the summer of 1996, defendant school district again prepared an IEP to guide the provision of special education to Chelsea during her approaching fourth-grade year ("the 1996–97 IEP"), as required by the IDEA. Concluding that the 1996–97 IEP was insufficient to meet Chelsea's needs, the Grims enrolled Chelsea in Kildonan for a second year. They later concluded that defendant's proposed IEP for Chelsea for her fifth-grade year ("the 1997–98 IEP") was similarly insufficient, so Chelsea remained at Kildonan for a third year.

Plaintiffs' subsequent challenges to the sufficiency of the 1996–97 and 1997–98 IEPs were consolidated before a single IHO. The IHO held that both IEPs "offered an appropriate public education in the least restrictive environment," *id.* at 55, and that the procedures followed in their development adequately complied with the IDEA, *id.* An SRO affirmed the decision of the IHO. *Id.*

## DISCUSSION

### I. Judicial Review Under the IDEA

■ Federal courts reviewing administrative determinations under the IDEA must base their decisions on "the preponderance of the evidence," taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties. *See* 20 U.S.C. § 1415(i)(2)(B). The Supreme Court and our Court have interpreted the IDEA as

strictly limiting judicial review of state administrative decisions. *See Rowley*, 458 U.S. at 204–08, 102 S.Ct. 3034; *Walczak*, 142 F.3d at 129. Federal courts reviewing administrative decisions must give "due weight" to the administrative proceedings, "mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak*, 142 F.3d at 129 (quoting *Rowley*, 458 U.S. at 206, 208, 102 S.Ct. 3034) (internal quotation marks omitted).

■ The Supreme Court in *Rowley* also held that the IDEA established a two-part inquiry for courts reviewing administrative determinations: "First, has the State complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034 (footnote omitted).

## II. Procedural Violations of the IDEA

Conducting this two-part inquiry, the District Court first held that defendant school district had failed to comply with the procedures set forth in the IDEA with respect to all three challenged IEPs.

The first violation the Court identified was extensive delay in Rhinebeck School District's development and review of all three challenged IEPs—at least that measure of the extensive delays for which the plaintiffs were not themselves responsible. *Grim*, No. 98 Civ. 4854, slip op. at 64–67.

The District Court then proceeded to identify a further violation in all three challenged IEPs, namely, their formulaic articulation of goals and strategies for evaluating Chelsea's progress. Specifically, the Court held that "the rote use of [a single] phrase in practically every objective of [the 1995–96] IEP is facially insuffi-

cient to meet the requirements of the IDEA." *Id.* at 71. The 1996–97 and 1997–98 IEPs, according to the Court, "echo[ ]" and fail to solve the problems of this first IEP. *Id.* Therefore, reversing the SRO, the District Court found that, even though delays did not independently render the IEPs insufficient under the IDEA, *id.* at 66–67, the combination of the delays and this second violation was sufficiently serious to render all three IEPs inadequate under the IDEA, *see id.* at 70–71.

■ The District Court correctly noted that the Supreme Court in *Rowley* emphasized the importance Congress attached to the statute's procedural requirements as "safeguards" of the rights protected by the IDEA. *See id.* at 63. Specifically, the *Rowley* Court noted that compliance with the significant procedural provisions of the IDEA "would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. As the District Court recognized, however, it does not follow that every procedural error in the development of an IEP renders that IEP legally inadequate under the IDEA. *See Grim*, No. 98 Civ. 4854, slip op. at 63.

■ It is no doubt true that administrative delays, in certain circumstances, can violate the IDEA by depriving a student of his right to a "free appropriate public education." For example, if a student were actually being educated under an inappropriate IEP, and state officers failed to review it in a timely manner, the delay might, in a particular instance, constitute a violation of the IDEA. That was not the case here. As discussed below, we uphold the administrative determinations that the IEPs for all three years were adequate to confer an educational benefit on Chelsea. Had her parents chosen to avail themselves of these programs, they would have

been available to Chelsea for the years in question. Because the programs were both appropriate and available, any delay in resolving the parents' challenges to them cannot have prejudiced Chelsea's education. *See J.D. v. Pawlet School District*, 224 F.3d 60, 69–70 (2d Cir.2000).

The absence of prejudice is particularly clear in the context of the Grims' actions. Chelsea's parents removed her from the school district and placed her in Kildonan for the 1995–96 school year months before they challenged the IEP for that year. Chelsea remained at Kildonan for all the years at issue, and there is no suggestion in the record that the Grims would have altered their placement decision had their challenges to the IEPs been resolved in a more timely fashion. *See Amann v. Stow School System*, 982 F.2d 644, 653 (1st Cir. 1992) (holding that an untimely decision upholding an IEP caused no remediable harm where there was no evidence that the late decision affected parents' decision to enroll child in private school); *see also Heather S. v. Wisconsin*, 125 F.3d 1045, 1060 (7th Cir.1997) (same). In these circumstances, we cannot conclude that Chelsea's right to a free appropriate public education was in any way endangered by delays in the State's administrative review process.

 It is not clear from the District Court's opinion whether the Court would have considered the IEPs' inadequate articulation of objectives a violation of the IDEA if this inadequacy had not been compounded by delay. However, having reversed the District Court's holding on the legal effect of delay, it is sufficient for our purposes to note that—whether a procedural or a substantive issue—the sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers. According-

ly, the *Rowley* requirement that courts give "due weight" to determinations by administrative bodies charged with implementation of the statute, applied below to flaws the District Court identified as "substantive," applies with equal force to administrative determinations of the adequacy of objectives set forth in an IEP.

### III. Substantive Violations of the IDEA

In addition to the procedural defects the District Court identified with respect to all three of the IEPs in question, the District Court identified substantive violations of the IDEA in the 1996–97 and 1997–98 IEPs, finding that "neither ... IEP was reasonably calculated to provide educational benefit to Chelsea." *Grim*, No. 98 Civ. 4854, slip op. at 81. According to the Court, the 1996–97 IEP was substantively inadequate because it did not sufficiently augment the services provided by the 1995–96 IEP in response to test scores that revealed that the student failed to progress during the preceding year. *Id.* at 77. Additionally, both the 1996–97 and 1997–98 IEPs were substantively inadequate, according to the District Court, because "at the second [IHO] hearing," during which the IHO evaluated both these later IEPs, "the testimony only support[ed] the conclusion that the Orton–Gillingham approach was the appropriate approach for teaching Chelsea." *Id.* at 78.

In *Rowley*, the Supreme Court overturned the reversal of an administrative decision under the IDEA, holding that the reviewing court had impermissibly "impos[ed its] view of preferable educational methods upon the States" by accepting the testimony of experts as to "the best method for educating the deaf." *Rowley*, 458 U.S. at 207 & n. 29, 102 S.Ct. 3034. The Supreme Court noted that adopting the expert opinion was inappropriate for a

court reviewing administrative determinations under the IDEA, because the optimal method for deaf education was "a question long debated among scholars," and the same expert evidence had been presented to, and found insufficient by, the SRO. *Id.*

Our Court applied the *Rowley* standard in *Walczak,* in which we overturned a District Court's reversal of an SRO's decision under the IDEA. We noted that, in order for the District Court to conduct an "independent" review of the sufficiency of an IEP under the IDEA that does not "impermissibly meddl[e] in state educational methodology," it must examine the record for "any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan." *Walczak,* 142 F.3d at 130 (quoting *Mrs. B. v. Milford Bd. of Educ.,* 103 F.3d 1114, 1121 (2d Cir.1997) (citing *Rowley,* 458 U.S. at 203, 207, 102 S.Ct. 3034)) (internal quotation marks omitted). We noted that such "objective evidence" is most easily interpreted in the form of grades in mainstream classes, but that "test scores and similar objective criteria" could also be considered. *Id.*

█ Despite the District Court's contention that its holding did not violate *Rowley* by "imposing [its] view of preferable education[al] methods upon the States," *Grim,* No. 98 Civ. 4854, slip op. at 81 (quoting *Rowley,* 458 U.S. at 207, 102 S.Ct. 3034) (internal quotation marks omitted), the Court's judgment reflects precisely the type of subjective credibility assessment that *Rowley* held to be inappropriate. The District Court concluded that Chelsea must be educated using a single educational methodology in a fully segregated environment in order to receive the "educational benefit" sufficient to meet the "basic floor of opportunity," *Rowley,* 458 U.S. at 201, 102 S.Ct. 3034, guaranteed by the IDEA. The Court reached this conclusion despite contrary holdings of the IHOs and SRO, and despite the IDEA's preference for educating students in the least restrictive environment possible. It justified its conclusion by finding that "[n]either the IHO nor the SRO [reviewing the two later IEPs] gave appropriate consideration to the experts on dyslexia, who had personal knowledge of the student in question." *Grim,* No. 98 Civ. 4854, slip op. at 81. Accordingly, in violation of *Rowley,* the District Court impermissibly chose between the views of conflicting experts on a controversial issue of educational policy—effective methods of educating dyslexic students—in direct contradiction of the opinions of state administrative officers who had heard the same evidence. *See Rowley,* 458 U.S. at 207 & n. 29, 102 S.Ct. 3034.

For the foregoing reasons, we hold that the District Court misapplied the standard of review applicable in IDEA cases by not according "due weight" to administrative determinations under the IDEA when it concluded that the 1996–97 and 1997–98 IEPs were substantively inadequate under the IDEA.

## CONCLUSION

In sum, we reverse the judgment of the District Court because it improperly held that the 1995–96, 1996–97, and 1997–98 IEPs were procedurally inadequate under the IDEA, and it erroneously held that the 1996–97 and 1997–98 IEPs were substantively inadequate under the IDEA. We therefore enter judgment in favor of the defendant, and affirm the SRO decisions denying plaintiffs private-school tuition reimbursement for the 1995–96, 1996–97 and 1997–98 school years.

The judgment of the District Court is reversed.