**Pauline CABOULI, parent of Disabled child Olivia Marcontell, Plaintiff–Appellee,**

v.

**CHAPPAQUA CENTRAL SCHOOL DISTRICT, Defendant–Appellant.**

**No. 06–0538–cv.**

United States Court of Appeals, Second Circuit.

Oct. 27, 2006.

Mark C. Rushfield, Shaw & Perelson, LLP, Highland, New York, for Defendant–Appellant.

George P. Zelma, Law Offices of George P. Zelma, New York, New York, for Plaintiff–Appellee.

PRESENT: Hon. WALKER, Chief Judge, Hon. PIERRE N. LEVAL, Hon. REENA RAGGI, Circuit Judges.

## SUMMARY ORDER

Defendant-appellant Chappaqua Central School District ("Chappaqua") appeals from the January 18, 2006, judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) granting summary judgment in favor of the plaintiff-appellee Pauline Cabouli on her claims pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1401 *et seq.* Cabouli sought tuition reimbursement and a judgment declaring that Chappaqua's Individualized Education Program ("IEP") for her daughter Olivia Marcontell's 2004–05 school year denied her access to a free and appropriate public education. We assume

the parties' familiarity with the remaining facts and procedural history of the case.

On appeal, Chappaqua argues that summary judgment was improper because (1) in applying the preponderance of the evidence standard, the district court did not properly defer to the SRO's administrative decision determining that the IEP provided Olivia with a free and appropriate education; and (2) the Committee on Special Education's ("CSE") failure to conduct a Functional Behavioral Assessment ("FBA") and Behavioral Improvement Plan ("BIP") did not make the IEP procedurally inadequate. We agree.

We review a district court's award of summary judgment de novo. *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191 (2d Cir.2005). Unlike a typical motion for summary judgment, this inquiry involves more than looking into disputed issues of fact. *Lillbask v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 83 n. 3 (2d Cir.2005). "Federal courts reviewing administrative determinations under the IDEA must base their decisions on the preponderance of the evidence, taking into account not only the record from the administrative proceedings, but also any further evidence presented before the District Court by the parties." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir.2003) (citing 20 U.S.C. § 1415(i)(2)(B)) (internal quotation marks omitted). The burden of proof in an administrative proceeding challenging an IEP is placed on the party seeking relief, *Schaffer v. Weast*, 546 U.S. 49, 126 S.Ct. 528, 537, 163 L.Ed.2d 387 (2005), which here is Cabouli.

In determining if parents who challenge a proposed IEP are entitled to a private school tuition reimbursement, we first ask if the proposed IEP was inadequate to afford the child an appropriate public education. *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir.1998). If

the IEP is inadequate, we then ask if the private schooling obtained by the parents is appropriate to the child's needs. *Id.*

For the first inquiry, the IEP is adequate if (1) the state complied with procedures in the IDEA and (2) the IEP is "reasonably calculated to enable the child to receive educational benefits." *Cerra*, 427 F.3d at 192 (internal quotation marks omitted). Because Cabouli does not appear to allege any procedural violations of the IDEA and the district court did not determine that any such violations had occurred, we will begin our analysis with the second part of the inquiry.

 When "challenging the adequacy of an educational placement under the IDEA, a trial court must 'determine, based on a preponderance of the evidence,' whether the educational program provided for a child is reasonably calculated to allow the child to receive educational benefits." *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1120 (2d Cir.1997). A federal court must examine the record for any "objective evidence" that the child is likely to make progress or regress under the proposed plan. *Walczak*, 142 F.3d at 130. Although the district court must engage in an independent review of the administrative record, *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see also Cerra*, 427 F.3d at 191–92, it is "expected to give due weight to these proceedings, mindful that the judiciary generally lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Walczak*, 142 F.3d at 129 (alteration in original) (internal quotation marks omitted).

There was considerable objective evidence in the administrative record supporting the adequacy of the IEP. A speech-language pathologist and school

psychologist testified that the IEP could meet Olivia's needs. Moreover, Chappaqua's director of special education and other school employees testified to the resources and accommodations that Chappaqua's program offered to disabled students, which specifically minimized plaintiff's concerns about class size and student-teacher ratio. Further, there was evidence of Olivia's recent social progress of forming friendships and participating on sports teams. From this evidence, one could reasonably conclude that Olivia would likely make educational progress under the IEP in an environment consistent with the IDEA's preference for mainstreaming. *See Walczak,* 142 F.3d at 122 (noting the IDEA's strong preference for disabled children to be educated, "to the maximum extent appropriate," together with their nondisabled peers (quoting 20 U.S.C. § 1412(5))).

■ The district court erred in not explaining why it discredited the SRO's interpretation of most of this objective evidence, *see M.S. v. Bd. of Educ.,* 231 F.3d 96, 105 (2d Cir.2000), and should have deferred to the SRO's findings when it pointed to contrary evidence. The district court should have deferred to the state administrators on the issue of credibility when it found Dr. Alkalay's testimony "disconcerting" and of uncertain reliability. *See J.R. v. Bd. of Educ.,* 345 F.Supp.2d 386, 399 (S.D.N.Y.2004) ("[O]n this second level of review of the [Impartial Hearing Officer's] decision, we accord the deference traditional on appellate review, to [the SRO's] assessment of the credibility of those witnesses who testified before him."). Although Dr. Davidovicz's 2002 neuropsychological report supported the district court's conclusion, it should not have chosen between the conflicting views

of experts against the opinions of state administrative officers who heard the same evidence. *See Grim,* 346 F.3d at 383 ("[T]he District Court impermissibly chose between the views of conflicting experts on a controversial issue of educational policy ... in direct contradiction of the opinions of state administrative officers who had heard the same evidence.").

Cabouli also argued before the SRO that the IEP was flawed because the CSE failed to conduct an FBA and develop a BIP, as required for students whose "behavior impedes his or her learning or that of others." 34 C.F.R. § 300.346(a)(2)(i); N.Y. Comp.Codes R. & Regs. tit. 8, § 200.4(b)(1)(v). Cabouli principally argues that an FBA was required because the IEP stated that one was required. This argument is unconvincing, however, because the IEP did not require an FBA until Olivia enrolled at Horace Greeley High School.

Accordingly, because the administrative record supports the adequacy of the IEP, the district court should have granted summary judgment to Chappaqua.

For the foregoing reasons, the district court's judgment is **REVERSED** and the case is **REMANDED** to the district court with instructions to enter judgment upholding the SRO's decision.