12-2464-cv
H.C., on behalf of M.C. v. Katonah-Lewisboro Union Free School District

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of June two thousand thirteen.

PRESENT:    DEBRA ANN LIVINGSTON,
            GERARD E. LYNCH,
            RAYMOND J. LOHIER, JR.,
                        Circuit Judges.
_____

H.C., ON BEHALF OF M.C., J.C., ON BEHALF OF M.C.,
                        *Plaintiffs-Appellants*,

    -v-                                           No. 12-2464-cv

KATONAH-LEWISBORO UNION FREE SCHOOL DISTRICT,

                        *Defendant-Appellee*.
_____

                        PETER D. HOFFMAN, Law Office of Peter D. Hoffman,
                        P.C., Katonah, NY *for Plaintiffs-Appellants*.

                        JOSEPH E. MADSEN, Ingerman Smith, L.L.P.,
                        Hauppauge, NY *for Defendant-Appellee*.


**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered May 24, 2012 is **AFFIRMED**.

Plaintiffs-Appellants H.C. and J.C. ("Parents"), individually and on behalf of their child M.C. ("M.C."), appeal from a Memorandum Opinion and Order of the United States District Court for the Southern District of New York (Davison, *M.J.*), entered May 24, 2012, granting summary judgment to Defendant-Appellee Katonah-Lewisboro Union Free School District ("Katonah") on Parents' claim for tuition reimbursement under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* Parents sought review of the administrative decision by a State Review Officer ("SRO") denying Parents tuition reimbursement for the 2008-2009 school year based on the SRO's determination that Katonah's Individualized Education Plan ("IEP") offered M.C. a free and appropriate public education ("FAPE"). The SRO annulled the decision of the Impartial Hearing Officer ("IHO"), who found that Katonah's IEP failed to provide a FAPE to M.C. and ordered Katonah to reimburse Parents for the 2008-2009 school year at the Windward School – which the IHO found to be an appropriate placement. On appeal, Parents argue principally that: (1) the district court failed to apply the preponderance of the evidence standard in concluding that the 2008-2009 IEP was appropriate; (2) the district court improperly considered the retrospective testimony of M.C.'s proposed second grade teacher; and (3) the district court abdicated its "gatekeeper" responsibilities under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal, which we reference only as necessary to explain our decision to affirm.

We review *de novo* a grant of summary judgment by the district court in an IDEA case. *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 184 (2d Cir. 2012). In doing so, we recognize that "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks

and citation omitted). "Although the district court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence, . . . such review 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review.'" *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 191-92 (2d Cir. 2005 ) (internal quotation marks and citation omitted) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). "We must give 'due weight' to the state proceedings, mindful that we lack 'the specialized knowledge and experience necessary to resolve . . . questions of educational policy.'" *R.E.*, 694 F.3d at 189 (quoting *Gagliardo*, 489 F.3d at 113). We "generally defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer," but, if the SRO's decision "is insufficiently reasoned to merit . . . deference," our Court may consider the IHO's analysis. *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 241, 246 (2d Cir. 2012) (internal quotation marks omitted).

1. The 2008-2009 IEP Was Substantively Adequate and Calculated to Enable M.C. to Make Progress

"In determining whether an IEP complies with the IDEA, courts make a two-part inquiry," first examining "whether there were procedural violations of the IDEA," and then examining "whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *R.E.*, 694 F.3d at 189-90 (internal quotation marks, alteration, and citations omitted). Here, Parents do not assert procedural violations of the IDEA on appeal but rather challenge the substantive adequacy of the 2008-2009 IEP, arguing that the IEP: (1) offered the same failed programs from previous years under which M.C. had failed to progress; (2) failed to address M.C.'s individualized special education needs; and (3) did not offer an appropriate FM system to enable M.C. to hear.

3

The district court conducted an independent review of the administrative record and concluded that the 2008-2009 IEP was reasonably calculated to enable M.C. to make progress. We find no error in this conclusion. In affirming the SRO's decision, the district court independently considered test results and witness testimony that confirmed that M.C. made progress during the 2006-2007 and 2007-2008 school years. Parents argue that M.C.'s reading skills, and particularly her cognitive fluency, demonstrate a lack of progress during this period, but several Katonah experts testified to M.C.'s reading progress from 2006 to 2008, and the district court was entitled to rely on Katonah's witnesses, as was the SRO. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir. 2003) (reversing a district court that "impermissibly chose between the views of conflicting experts on a controversial issue of educational policy—effective methods of educating dyslexic students—in direct contradiction of the opinions of state administrative officers who had heard the same evidence"). To the extent that Parents argue that the gap between M.C. and her peers was growing in terms of reading ability, moreover, "a child's academic progress must be viewed in light of the limitations imposed by the child's disability." *Mrs. B. ex rel. M.M. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1121 (2d Cir. 1997). We agree with the district court's conclusion that the 2008-2009 IEP was reasonably calculated to enable M.C. to continue making progress at Katonah.

Relying on its earlier conclusion that M.C. made progress in previous years, the district court also rejected Parents' arguments that M.C.'s special education needs were not met in the 2008-2009 IEP. In particular, the court noted that M.C.'s second-grade IEP provided for resource room use, occupational therapy, and reading intervention, and that "even if this program was similar to the previous years' IEPs, those IEPs enabled M.C. to receive meaningful educational benefits and make progress." For the reasons stated above, we agree with the district court's conclusion based on the preponderance of the evidence.

Finally, considering Parents' arguments that the 2008-2009 IEP inadequately addressed M.C.'s needs for assistive technology because it specified use of the "Radium" broadcast FM system as opposed to the "Phonak" personal system, the district court concluded that Katonah did not fail to provide a FAPE where its IEP provided for a different assistive technology than the model preferred by Parents' audiologist, particularly where Parents offered no evidence to demonstrate the inadequacy of the Radium system. We agree with the district court. The IDEA does not require that an IEP furnish "every special service necessary to maximize each handicapped child's potential," *Rowley*, 458 U.S. at 199, and a school district does not fail to provide a child with a FAPE simply because it employs one assistive technology over another, so long as the technology employed is reasonably calculated to permit the child to receive educational benefits, *see Sherman v. Mamaroneck Union Free Sch. Dist.*, 340 F.3d 87, 90, 94 (2d Cir. 2003) (holding that a school district did not fail to provide a child with a FAPE when it denied the assistive technology preferred by the family in favor of a different technology reasonably calculated to permit educational benefit). We cannot conclude on this record that the district court erred in finding that the Radium FM broadcast system satisfied this criterion.

2.      Retrospective Testimony Did Not Materially Alter the 2008-2009 IEP

Parents also argue on appeal that both the district court and the SRO erred in relying on the retrospective testimony of M.C.'s proposed second-grade teacher from Katonah, who was not present at the May 2008 meetings discussing the 2008-2009 IEP and was not identified within the IEP as M.C.'s intended teacher. Our Court clarified in *R.E. v. New York City Department of Education* that "an IEP must be evaluated prospectively as of the time it was created," and therefore "[r]etrospective evidence that materially alters the IEP is not permissible." 694 F.3d at 188. We

note that although the SRO considered the testimony of Kristen Colsey—the proposed second grade teacher—the district court did not rely on her testimony to affirm the SRO's conclusion that the 2008-2009 IEP was appropriate. Moreover, we agree with the district court and with the SRO that the 2008-2009 IEP was appropriate, based on our independent review of the record (and without considering Colsey's testimony). Accordingly, we need not reach the issue whether the SRO improperly used retrospective evidence in reaching its conclusion. *See id.* at 195 (concluding for one of the three cases at issue that the SRO inappropriately used retrospective evidence but nevertheless agreeing with the SRO's conclusion about the IEP's substantive adequacy based on other evidence in the record).

### 3. The *Daubert* Gatekeeper Requirement Is Not Applicable

Finally, Parents argue that the district court abdicated its gatekeeper role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), which requires a trial judge to ensure that an expert's testimony rests on a reliable foundation and is relevant to the task at issue. Whether *Daubert* applies to IDEA hearings before state administrative agencies is highly questionable, *see Richardson v. Perales*, 402 U.S. 389, 400 (1971) (holding that strict rules of evidence do not apply to social security hearings "so as to bar the admission of evidence otherwise pertinent"), but we need not reach that issue. The district court did not receive any evidence apart from the administrative record developed at the agency and so could not be expected to be a "gatekeeper." The district court instead properly reviewed the evidence developed before the administrative agency, engaging in an independent review of the record, and it issued its decision based upon a preponderance of that evidence, as required by 20 U.S.C. § 1415(i)(2)(C).

***

6

Because we agree with the district court's conclusion that Katonah offered M.C. a FAPE for the 2008-2009 school year, we do not reach the question whether Parents demonstrated that they are entitled to reimbursement because the Windward School was an appropriate placement and because equitable considerations support their claim.

We have considered all of Parents' remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.  We **DENY** as moot Katonah's motion to strike material from Parents' reply brief and from the appendix.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk