14-4119-cv
D.A.B. v. New York City Department of Education

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of November, two thousand fifteen.

PRESENT:  CHESTER J. STRAUB,
           REENA RAGGI,
           RICHARD C. WESLEY,
                *Circuit Judges.*

------------------------------------------------------------------------

D.A.B., individually and collectively and on behalf of D.B., M.B., individually and collectively and on behalf of D.B.,

           *Plaintiffs-Appellants,*

        v.                          No. 14-4119-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,
           *Defendant-Appellee.*

------------------------------------------------------------------------

APPEARING FOR APPELLANTS:    JESSE COLE CUTLER (Gregory Cangiano, Regina Skyer, and Linda Goldman, *on the brief*), Skyer & Associates, L.L.P., New York, New York.

APPEARING FOR APPELLEE:    JEREMY W. SHWEDER, Assistant Corporation Counsel (Richard Dearing, Assistant Corporation Counsel, *on the brief*), *for*

Zachary W. Carter, Corporation Counsel of the City of New York, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (John G. Koeltl, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 3, 2014, is AFFIRMED.

Plaintiffs D.A.B. and M.B., the parents of D.B., a now 11-year-old autistic child, appeal from awards of summary judgment in favor of defendant New York City Department of Education ("DOE") on plaintiffs' claims for reimbursement of private education expenses under the Individuals with Disabilities Education Act ("IDEA"), see 20 U.S.C. §§ 1400 et seq.; D.A.B. v. New York City Dep't of Educ., 973 F. Supp. 2d 344 (S.D.N.Y. 2013), and for discriminatory denial of a public education under section 504 of the Rehabilitation Act, see 29 U.S.C. § 794; D.A.B. v. New York City Dep't of Educ., 45 F. Supp. 3d 400 (S.D.N.Y. 2014). We review the awards of summary judgment de novo, although in the IDEA context we do so mindful that "the responsibility for determining whether a challenged [Individualized Education Plan ("IEP")] will provide a child with [a free and appropriate public education ("FAPE")] rests in the first instance with administrative hearing and review officers." M.W. ex rel. S.W. v. New York City Dep't of Educ., 725 F.3d 131, 138 (2d Cir. 2013) (internal quotation marks omitted); see also M.H. v. New York City Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012); J.D. ex rel. J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 65 (2d Cir. 2000) (applying de novo review to summary

2

judgment on Rehabilitation Act claim).   We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Deference to the SRO

As a threshold matter, plaintiffs claim error in the district court's decision to defer to an adverse ruling by the state review officer ("SRO") rather than a favorable ruling by the impartial hearing officer ("IHO") on plaintiffs' reimbursement claim based on DOE's alleged failure to provide D.B. with an appropriate IEP in public school.   We identify no error because, like the district court, we conclude that the SRO's decision is thorough, well-reasoned, and based on the record.   See R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012); Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380−81 (2d Cir. 2003); Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998).   Plaintiffs' disagreement with the SRO's decision and preference for the IHO's favorable decision is insufficient reason for a reviewing court to substitute the IHO's determination for that of the SRO.   As this court explained in M.H. v. New York City Department of Education, "[w]here the IHO and SRO disagree, reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence."   685 F.3d at 246.   Rather, "courts must defer to the reasoned conclusions of the SRO as the final state administrative determination."   Id. Accordingly, like the district court, we defer to the SRO's findings where appropriate.

3

2.	Burden of Proof

Plaintiffs claim that the SRO misapplied the burden of proof set forth in N.Y. Educ. Law § 4404(1)(c), which requires DOE to prove that the challenged IEP provided D.B. with the requisite FAPE.  The record belies this claim.  In his 15-page decision, the SRO cited § 4404(1)(c) and explicitly stated that "[t]he burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement."  J.A. 35.  Nothing suggests that the SRO impermissibly shifted that burden when analyzing the record.  Thus, plaintiffs' burden argument is meritless.

3.	Retrospective Testimony

Plaintiffs contend that the district court erred in concluding that testimony from three of their hearing witnesses, Dr. Blaustein, Dr. Oratio, and Sharna McMicken, was impermissibly retrospective under R.E. v. New York City Department of Education, 694 F.3d 167 (2d Cir. 2012).  See D.A.B. v. New York City Dep't of Educ., 973 F. Supp. 2d at 361−62 (stating that "substantively appropriate IEP may not be rendered inadequate through testimony and exhibits that were not before the CSE about subsequent events and evaluations that seek to alter the information available to the CSE" and that "[i]t would be inappropriate to allow the plaintiffs to attack the IEP with retrospective testimony while prohibiting the Department from retrospective bolstering").  We need not address this

4

issue, however, because any error regarding the inclusion of the respective witnesses' testimony is necessarily harmless. Whether or not the three witnesses' testimony was treated as part of the administrative record, the SRO's conclusion that the challenged IEP was procedurally and substantively adequate was not unreasonable.

4.    Adequacy of the IEP

IDEA review of an IEP is both procedural and substantive, with "[s]ubstantive inadequacy automatically entitl[ing] the parents to reimbursement," R.E. v. New York City Dep't of Educ., 694 F.3d at 189–90, but with procedural violations doing so only if they "impeded the child's right to a free appropriate public education," "significantly impeded the parents' opportunity to participate in the decisionmaking process," or "caused a deprivation of educational benefits," 20 U.S.C. § 1415(f)(3)(E)(ii); see R.E. v. New York City Dep't of Educ., 694 F.3d at 190.

a.    Procedural Adequacy

To be procedurally adequate, an IEP must contain, among other things, "measurable annual goals for the child." M.H. v. New York City Dep't of Educ., 685 F.3d at 245 (observing that "IDEA and its regulations require that the IEP include short-term and long-term academic and nonacademic goals . . . , as well as evaluative procedures for measuring a student's progress in achieving the short- and long-term goals contained in the IEP"); see 20 U.S.C. § 1414(d)(1)(A)(i)(III); 34 C.F.R. § 300.320(a)(2)−(3); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2)(iii).

5

Plaintiffs contend that the annual goals in D.B.'s 2010−2011 IEP are procedurally inadequate because they lack specificity and measurability. The district court concluded otherwise, persuaded by the SRO's determination that any vagueness was ameliorated by the specificity and measurability of D.B.'s short-term goals. See D.A.B. v. New York City Dep't of Educ., 973 F. Supp. 2d at 359−60.

"[T]he sufficiency of goals and strategies in an IEP is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d at 382. The nearly 100 short-term goals in D.B.'s IEP sufficiently identify the nature of each overarching annual goal. Moreover, the short-term goals provide considerable detail as to how the broader annual goals would be implemented and measured. See C.A. 1067−82. Thus, although plaintiffs complain that the annual goals fail to identify how and when the annual goals will be met, it is clear that progress towards the annual goals reasonably would have been measured by the extent to which D.B. had achieved the short-term goals. This is consistent with the requirement for three progress reports during the year on each annual goal. See C.A. 1067−82.[1]

Accordingly, we perceive no procedural violation, much less one that impeded D.B.'s right to a FAPE, impeded plaintiffs' opportunity to participate in the IEP process, or caused a deprivation of educational benefits so as to entitle plaintiffs to reimbursement for

---

[1] The IEP elsewhere provided that D.B. would participate in "alternate assessment," where D.B. would be assessed through "teacher observation, teacher assessment, [and] teacher made materials." C.A. 1085.

their unilateral placement.   See R.E. v. New York City Dep't of Educ., 694 F.3d at 190.

        b.      Substantive Adequacy

In reviewing an IEP for substantive adequacy, we are mindful of IDEA's mandate for "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" in more than a trivial way.   Board of Educ. v. Rowley, 458 U.S. 176, 203 (1982); see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 194–95 (2d Cir. 2005).   IDEA does not require a school district to furnish "every special service necessary to maximize each handicapped child's potential."   Board of Educ. v. Rowley, 458 U.S. at 199; see also Bryant v. New York State Educ. Dep't, 692 F.3d 202, 215 (2d Cir. 2012) (recognizing that IDEA ensures "appropriate education, not one that provides everything that might be thought desirable by loving parents" (internal quotation marks omitted)).   Thus, we will not "substitute our own notions of sound educational policy for those of the school authorities under review"; rather, we "must defer to the administrative decision particularly where the state officer's review has been thorough and careful." M.W. v. New York City Dep't of Educ., 725 F.3d at 138–39 (internal alterations, citations, and quotation marks omitted).

After an independent review of the administrative record, we reach the same conclusion as the district court:   D.B.'s IEP was sufficiently tailored to his needs to ensure meaningful progress.   Although plaintiffs contend that the record supports D.B.'s need for a 1:1 teaching ratio, the SRO's decision that the 6:1:1 placement offered to D.B. was likely

to produce progress and not regression is sufficiently supported by the record to merit deference. See R.E. v. New York City Dep't of Educ., 694 F.3d at 192 ("The adequacy of 1:1 paraprofessional support as opposed to 1:1 teacher support is precisely the kind of educational policy judgment to which we owe the state deference if it is supported by sufficient evidence. . . .").

After considering and rejecting a 12:1:1 placement, the CSE team decided that a 6:1:1 placement—the placement recommended by the applicable New York regulations for "students whose management needs are determined to be intensive, [and who] require[e] a significant degree of individualized attention and intervention," see N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(h)(4)(ii)(a)—coupled with a full-time, individual behavior management paraprofessional, would adequately address D.B.'s needs. In addition, D.B.'s IEP provided for: (1) 1:1 speech and language therapy five times a week for 45 minutes and once a week for 30 minutes; (2) 2:1 speech and language therapy once a week for 30 minutes; (3) 1:1 counseling twice a week for 30 minutes; (4) 1:1 occupational therapy five times a week for 45 minutes; and (5) 1:1 physical therapy twice a week for 30 minutes. Thus, under the terms of the IEP, D.B. would be in a classroom twelve months a year, with no more than five other students, a special education teacher, a classroom paraprofessional, and a behavior management paraprofessional dedicated solely to him. Moreover, D.B. would receive 1:1 related services for at least 10 hours each week.

Plaintiffs argue that the SRO's reliance on D.B.'s progress during the 2009−2010 school year was misplaced because that progress was made in a 1:1 setting at the McCarton Center. We disagree. D.B.'s progress at the McCarton Center was relevant to the SRO's assessment of whether the record reflected that D.B. would succeed in a more interactive classroom environment, particularly given that part of D.B.'s McCarton program involved placing him in a classroom with three other students, each of whom had their own special education teacher, and his attendance, with his special education teacher, in a typical local preschool with an 11:1 student-teacher ratio. The record reflects that, in the latter setting, D.B. was able to "follow group instructions that happen every day repetitively." C.A. 429. Thus, the SRO's reliance on D.B.'s 2009−2010 progress was neither inappropriate nor unwarranted.

Plaintiffs highlight that many of their hearing witnesses testified that a 1:1 ratio was either "appropriate" or "necessary" for D.B. See, e.g., C.A. 434, 454−55, 697. To the extent these opinions identified behavior as a dominant impediment to D.B.'s learning,[2] it was not unreasonable for the SRO to conclude that, with dedicated 1:1 support by a

---

2 See, e.g., C.A. 434 (McCarton ABA director testifying that 1:1 ratio was "appropriate" and "necessary" for D.B. "in terms of both skill acquisition and for problem behavior," and specifically noting that D.B. needs "somebody with him constantly" to ensure safety of both D.B. and other students), 697 (D.B.'s speech therapist testifying that 1:1 ratio was appropriate because of issues related to D.B.'s "attention" and "behaviors"); see also C.A. 430−31 (McCarton ABA director testifying that 1:1 placement would be important in larger settings because D.B. still exhibits "problem behavior," "needs support in terms of engaging in . . . play skills and socialization skills," and "needs constant feedback . . . to keep him on task").

9

behavior management paraprofessional, D.B. could make meaningful advancement in a classroom with a 6:1:1 teaching ratio. To the extent the opinions were grounded in concern that D.B. was not acquiring "skills as quickly as we would like in a group setting," C.A. 454 (emphasis added), such testimony may indicate that a 1:1 placement would be optimal to maximize D.B.'s potential, but such an assessment, which exceeds IDEA's requirements, did not preclude the SRO from concluding from the totality of evidence that a 6:1:1 placement with a dedicated behavioral management paraprofessional and supplemental 1:1 services would allow D.B. meaningfully to advance.

Plaintiffs' remaining substantive challenges to the IEP are meritless. Because D.B.'s 2010−2011 IEP was substantively as well as procedurally adequate, plaintiffs' claim for reimbursement fails. See Reyes ex rel. R.P. v. New York City Dep't of Educ., 760 F.3d 211, 215 (2d Cir. 2014).

5.    Section 504 Claim

Plaintiffs also contend that DOE violated section 504 of the Rehabilitation Act by discriminating against D.B. because of his disability. Specifically, plaintiffs claim that DOE denied D.B. access to public education because he was not vaccinated.

We conclude, largely for the reasons stated by the district court in its thorough opinion, that plaintiffs have failed to raise a genuine issue of material fact as to DOE's alleged section 504 violation. See D.A.B. v. New York City Dep't of Educ., 45 F. Supp. 3d at 406–07. Because plaintiffs unilaterally placed D.B. at the McCarton Center before

10

receiving a public school placement designation from DOE, plaintiffs simply cannot show that D.B. was denied access to public education for the 2010−2011 school year based on his failure to be vaccinated. Moreover, plaintiffs did not submit a vaccination exemption request in connection with the 2010−2011 school year; thus, DOE never denied one. Nor could a reasonable juror find that D.B. was denied access to public school in 2010 or 2011 because of his vaccination record. Further, for the reasons well stated by the district court, no reasonable juror could conclude that DOE discriminated against D.B. because of his disability. See D.A.B. v. New York City Dep't of Educ., 45 F. Supp. 3d at 406–07.

Because we identify no error in the dismissal of plaintiffs' section 504 claim on its merits, we need not address the district court's further determination that plaintiffs, who succeeded at the IHO level on their IDEA-based reimbursement claim, nevertheless failed to exhaust their administrative remedies by not cross-appealing the IHO's adverse section 504 finding to the SRO.

6.    Conclusion

We have considered plaintiffs' remaining arguments and conclude that they are without merit. We therefore affirm the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

11