15-4050-cv
*J.D. v. N.Y.C. Dep't of Educ., et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand seventeen.

PRESENT:
PETER W. HALL,
DEBRA ANN LIVINGSTON,
            *Circuit Judges*,
NICHOLAS G. GARAUFIS,*
            *District Judge*.

_____

J.D., ON BEHALF OF A.P.,

            *Plaintiff-Appellant*,

            v.                                                        15-4050-cv

NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARIÑA, IN HER OFFICIAL CAPACITY AS
CHANCELLOR OF THE NEW YORK CITY SCHOOL
DISTRICT,

            *Defendants-Appellants*.

_____

---

* Judge Nicholas G. Garaufis, of the United States District Court for the Eastern District of New York, sitting by designation.

For Plaintiff-Appellant: CAROLINE J. HELLER, Greenberg Traurig, LLP, New York, N.Y.

For Defendants-Appellees: MAX MCCANN, Assistant Corporation Counsel (Scott Shorr, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Ramos, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED** and the case is **REMANDED** for further action consistent with this decision.

Plaintiff-Appellant J.D., on behalf of her minor son A.P., appeals from the judgment of the United States District Court for the Southern District of New York (Ramos, *J.*), denying Plaintiff-Appellant's motion for summary judgment and granting Defendants-Appellees' cross-motion for summary judgment. *See J.D. ex rel. A.P. v. N.Y.C. Dep't of Educ.*, No. 14-CV-9424, 2015 WL 7288647 (S.D.N.Y. Nov. 17, 2015). J.D. alleges that Defendants-Appellees the New York City Department of Education and Carmen Fariña, in her official capacity as Chancellor of the New York City School District (together, the "DOE"), failed to offer A.P. a free appropriate public education ("FAPE") for the 2011-2012 academic school year, as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, elaborating only as necessary to explain our decision.

**Background**

A.P. was a student at a public elementary school. He began receiving special education services in the third grade. During his fifth grade year, pursuant to the recommendation of his

teachers because of his learning difficulties, A.P. was evaluated by The Psychological Center at City College of the City of New York. On August 2, 2010, the Center issued its findings (the "Evaluation"), concluding, among other things, that A.P. was a "non-reader" entering the sixth grade and that he needed "intensive and specialized reading instruction." The Evaluation defined such instruction, in part, as 90-minute sessions four or five days per week in groups no larger than three students. Soon after, a Committee on Special Education ("CSE") was convened to develop an individualized education program ("IEP") for the 2010-2011 school year. The resulting IEP (the "2010 IEP") recommended that A.P. receive 40-minute one-on-one speech/language therapy sessions five times per week and that A.P. remain in a special education class with a ratio of 12 students to one teacher ("12:1"). Despite the implementation of the 2010 IEP, A.P. continued to struggle and still could not read by January 2011. J.D. then removed her son from public school and enrolled him, at DOE's expense, at the Sterling School ("Sterling"), a specialized private school for children with language-based learning disabilities. For the remainder of the sixth grade, Sterling placed A.P. in classes with a ratio of nine students to two teachers, and provided him with additional one-on-one instruction throughout the day. By May 2011, A.P. was reading at a mid-first grade level.

On May 18, 2011, a new CSE developed an IEP for A.P. for the 2011-2012 academic year to be implemented in a public school. The new IEP (the "2011 IEP") built upon the 2010 IEP, but included additional services, including a recommendation that A.P. receive 45-minute sessions of Special Education Teacher Support Services ("SETSS") five times per week. SETSS is supplemental instruction by a special education teacher provided in groups of eight students or fewer. J.D. eventually rejected the 2011 IEP and, at her own expense, re-enrolled A.P. at Sterling.

3

J.D. filed a due process complaint against the DOE challenging the adequacy of the 2011 IEP. An Impartial Hearing Officer ("IHO") heard evidence from both sides during hearings held over four days in 2012, after which the IHO concluded that the 2011 IEP did provide a FAPE and thus was adequate. J.D. appealed, but the decision was affirmed by a State Review Officer ("SRO"), and then the district court. The appeal of the district court's decision is now before us.

**Discussion**

This Court conducts a "circumscribed *de novo* review" of a district court's evaluation of administrative decisions in the IDEA context. *M.W. ex. rel. S.W. v. N.Y.C. Dep't of Educ.*, 725 F.3d 131, 138 (2d Cir. 2013). "This review requires a more critical appraisal of the agency determination than clear-error review but falls well short of complete *de novo* review." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 108 (2d Cir. 2016) (internal quotation marks omitted). We seek only to verify whether a preponderance of the evidence supports the administrative decisions based on our independent examination of the record. *See M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012). We are mindful that courts lack the "specialized knowledge and educational expertise" possessed by state administrators, and therefore we will defer to their well-reasoned opinions on issues of education policy. *See M.W.*, 725 F.3d at 138 (citing *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012)). We do not, however, "rubber stamp" their conclusions. *Id.*

On appeal, J.D. argues, among other things, that the IHO and SRO determinations—namely, that the 2011 IEP would have afforded A.P. a FAPE—were poorly reasoned and unsupported by the record, and the district court erred in upholding their decisions. We agree. The burden was on the DOE to demonstrate the appropriateness of the IEP. *M.H.*, 685 F.3d at 224-25. In terms of services, the 2011 IEP was substantially similar to the 2010 version that the

4

IHO found to be inadequate, except for several additional recommendations, most notable of which was the supplemental SETSS instruction. The pertinent issue then, is whether inclusion of the SETSS sessions was sufficient to render the 2011 IEP adequate, meaning that it was "reasonably calculated to enable [A.P.] to receive educational benefits." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982)). Yet, little in the record directly tackles this critical question.

J.D. has repeatedly argued that the prescribed SETSS sessions would not have been sufficiently intense to provide A.P. with educational benefits. The 2011 IEP provided for five 45-minute SETSS sessions per week (compared to the Evaluation's recommended 90-minute sessions four or five times a week) in instructional groups of up to eight students (whereas the Evaluation recommended no more than three students in a group). J.D. notes that the instruction A.P. received at Sterling, which turned A.P. from a non-reader to a reader at a mid-first grade level, was at a minimum consistent with the Evaluation he received, and likely more intensive. *See* June 22, 2012, Hr'g Tr. 263:20-268:19 (describing A.P.'s instructional program at Sterling).

This Court agrees with the DOE that the Evaluation need not be taken as gospel, and that the DOE was not required to commission an expert report of its own to counter the Evaluation's findings. It may well be that A.P. would have continued progressing with sessions of shorter duration or in larger groups than recommended in the Evaluation. We do not know, because there is no support for that hypothesis in the record. Neither the state administrators nor the DOE witnesses discussed why the intensity of the SETSS sessions was adequate. The IHO and SRO determined that the 2011 IEP was adequate without directly addressing the issue, and the DOE witnesses offered general and conclusory testimony that they agreed with the recommendations of the 2011 IEP, *see, e.g.*, June 19, 2012, Hr'g Tr. 221:24-222:1 (school

5

psychologist testified that she agreed with the recommendations); *id.* 126:17-19 (same from a special education teacher who taught A.P.). The only DOE witness who addressed the intensity of the SETSS sessions was a SETSS instructor, and she agreed with the *Evaluation's* recommendations on duration and group size. *See id.* 160:4-12 ("[B]ecause his deficits are so low," A.P. needed double the 2011 IEP recommended SETSS sessions.); *id.* 161:5-9 (SETSS sessions should be small, either "alone" or in groups of "maybe three kids."). The lack of reasoning and evidentiary support is especially problematic in light of the responsibility of courts to "examine the record for 'any objective evidence indicating whether the child is likely to make progress or regress under the proposed plan' [such as] 'test scores and similar objective criteria.'" *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 383 (2d Cir. 2003) (quoting *Walczak*, 142 F.3d at 130). The only objective evidence in this record is that A.P. did not progress as a reader until he enrolled at Sterling, where the educational program was at least as intense as the one prescribed in the Evaluation. Several months of this intense instruction during A.P.'s sixth grade year transformed him from a non-reader to a student who read at a mid-first grade level.

We neither know, nor have an opinion as to, the number of hours of SETSS that would have been appropriate for A.P., or whether group sizes of eight or three would be needed to provide him with an educational benefit. We admittedly lack the "specialized knowledge and educational expertise" necessary to make such pedagogical determinations. *M.W.*, 725 F.3d at 138. To meet its burden to show the appropriateness of the IEP, however, the DOE needed more than conclusory and contradictory testimony from its witnesses. *M.H.*, 685 F.3d at 224-25. The SRO and IHO also needed to address the intensity question in light of the Evaluation and A.P.'s progress at Sterling, and provide reasons for their conclusion that the SETSS sessions were

6

adequate. We therefore hold that a preponderance of the evidence does not support the IHO and SRO's determination that the 2011 IEP would have provided A.P. with a FAPE. *See M.W.*, 725 F.3d at 138; *A.M. v. N.Y.C. Dep't of Educ.*, No. 15-4076, 2017 WL 83384, at *6 (2d Cir. Jan. 10, 2017).[1]

Having determined that the record does not support a finding that the 2011 IEP was adequate, we do not consider the parties' remaining contentions on appeal. For the reasons stated above, the district court's judgment is **REVERSED** and the case **REMANDED** for further action consistent with this decision.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[1] J.D. also asserts that the district court abdicated its responsibility to conduct an independent review of the record when it purportedly afforded "greater deference" to the administrative decisions based on their unanimity as to the adequacy of the 2011 IEP. Regardless of whether the SRO and IHO agree, courts maintain an independent obligation to review the entire administrative record and assess whether the administrative decisions were supported by a preponderance of the evidence. *See* 20 U.S.C. § 1415(i)(2)(C); *see also M.H.*, 685 F.3d at 226. However, we have no difficulty concluding that the district court understood and met its obligations here. Notwithstanding its emphases on the SRO and IHO's agreement, the district court undertook an in-depth evaluation of the evidence in the record and the decisions of the state administrators. The district court's reluctance to disturb the agencies' findings derives not from the fact of their agreement, but rather from its view of "the evidence in the DOE's favor" and its wariness of "imposing its own view of education policy in place of the views of the state's administrative authorities, without a particularly strong basis for doing so." *J.D.*, 2015 WL 7288647, at *20.

7